Schleede v State of New York (2019 NY Slip Op 02188)





Schleede v State of New York


2019 NY Slip Op 02188


Decided on March 21, 2019


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: March 21, 2019

526609

[*1]DAVID A. SCHLEEDE, Appellant,
v
STATE OF NEW YORK, Respondent.

Calendar Date: January 8, 2019

Before: Lynch, J.P., Mulvey, Devine, Aarons and Pritzker, JJ.


McCabe & Mack LLP, Poughkeepsie (David L. Posner of counsel), for appellant.
Letitia James, Attorney General, Albany (Patrick A. Woods of counsel), for respondent.



MEMORANDUM AND ORDER
Lynch, J.
Appeal from an order of the Court of Claims (Hard, J.), entered October 3, 2017, which denied claimant's motion for partial summary judgment.
Claimant is a bike shop owner and avid bicyclist. On April 29, 2015, he was leading a group of bicyclists on a
45-mile recreational bike ride. Less than five minutes after the ride started, claimant crashed and suffered serious injuries on State Route 209 in Ulster County. Claimant filed this claim alleging, among other things, that defendant's failure to properly maintain and repair the road caused his accident. Once discovery was completed, claimant moved for summary judgment on the issue of liability. The Court of Claims denied the motion, and claimant appeals.
"[D]efendant owes the public a nondelegable duty to maintain its roadways in a reasonably safe condition" (Rockenstire v State of New York, 135 AD3d 1131, 1132 [2016]). "Where [defendant] has actual or constructive notice of a hazardous condition and fails to take reasonable measures to remedy the danger," it may be liable for resulting injuries (id.; see Friedman v State of New York, 67 NY2d 271, 286 [1986]); Gray v State of New York, 159 AD3d 1166, 1167 [2018]). Defendant is not, however "required to act as an insurer against all accidents" (Harjes v State of New York, 71 AD3d 1278, 1279 [2010]).
Claimant's submissions in support of his motion for partial summary judgment included photographs of the roadway where he fell from his bicycle, roadway repair records and deposition testimony by engineers employed by the Department of Transportation (hereinafter DOT). Claimant also submitted affidavits by N. James Tomassetti, a bicyclist in the group who witnessed claimant's accident, William Fitzpatrick, an engineer with an expertise in traffic operations and accident reconstruction, and Timothy G. Joganich, an expert in the field of bicycle safety and bicycle accident reconstruction.
Tomassetti explained that he was fifth in line behind claimant as they rode from an overpass exit ramp onto Route 209. Because there was a "fair amount of traffic" on [*2]Route 209, the group had to ride in the far-right lane, which was in "bad shape." He recalled that he saw claimant first point to warn those behind him that there was a condition in the road and then fall, "seconds later." He recalled that claimant rode over three bumps in the road that were immediately followed by an area under the overpass that was "almost the entire width of the lane and it was completely eroded, uneven and choppy." According to Tomassetti, the shadow from the overpass made the condition difficult to see, and claimant could not avoid it by riding on the shoulder because it was covered with debris.
Keith Savoury, a resident engineer employed by DOT and assigned to Ulster County, testified that he drove Route 209 every day and never noticed the condition in the area where claimant fell. He conceded that the area had been "a problem for awhile" because water would drip from the bridge, freeze and thaw and "rough[] up" the pavement. When he went to the area after the accident, he saw pitting and delamination consistent with this description. According to Savoury, there were no complaints made about this area nor any specific request for repairs. Nevertheless, because the prior winter had been "bad" and the roads were in "poor shape," there was a standard order that employees fill potholes every day. Although he did not know for sure, Savoury explained that the delamination that he observed the day after the accident could have been progressing for up to seven years. He testified that, as this was an "average" deformity of 1 to 1½ inches in depth, it would not have been prioritized for repair.
John J. Marino, also a DOT employee, described the delamination condition as "flaked off" pavement caused by the "freeze/thaw cycle." He inspected Route 209 at least once a week as part of his job and did not recall whether he observed it prior to claimant's accident. He explained that generally, because Route 209 was heavily trafficked, repairs were a priority. Further, although a delamination like the one on Route 209 was a condition that required attention, its priority would be secondary to pothole repair. Marino believed that the three bumps resulted from previous cold patch repairs and that, to permanently repair the condition, the delamination would have to be filled with hot patch, not cold patch.
Fitzpatrick identified the hazardous condition as a "discontinuity" that extended across the entire width of the lane for approximately 15 to 20 feet, together with the accumulation of winter sand and debris on the right shoulder. Joganich described the discontinuity as an "unavoidable" condition given the traffic, the debris on the shoulder and the shadow that would have been cast by the overpass. Further, according to Joganich, the "size of the delaminated section, the preceding 'bumps' and the condition of the shoulder were dangerous for cyclists, who are proper users of the roadway."
Initially, we agree with claimant that he was not required to establish the absence of his own comparative negligence to obtain summary judgment in his favor on the issue of liability (see Rodriguez v City of New York, 31 NY3d 312, 315 [2018]). For the following reasons, however, we find that the Court of Claims properly determined that claimant did not meet his burden of proof in the first instance because there were questions of fact precluding summary judgment in claimant's favor.
In support of claimant's motion, Fitzpatrick concluded that defendant should have had notice of "the condition" that caused claimant to fall and that the discontinuity should have been remedied. Both Fitzpatrick and Joganich confirmed that the hazardous condition was the discontinuity, the bumps and the debris on the shoulder. There was no evidence that defendant had actual notice of this hazard and only conflicting evidence regarding constructive notice. Savoury testified that there had been no prior complaints or accidents and that the road was regularly inspected (see Bottieri v Tandy, Inc., 117 AD3d 1264, 1264 [2014]). However, defendant may be charged with constructive notice of the hazard if it "existed for a sufficient period of time to allow defendant[] to discover and rectify the problem" (Barrett v State of New York, 13 AD3d 775, 776 [2004]; see Blake v City of Albany, 48 NY2d 875, 877 [1979]; Carter v State of New York, 119 AD3d 1198, 1199 [2014]). Although most of the witnesses attributed the bumps to the effects of cars driving over cold patch and the delamination to the effects of the freeze/thaw cycle, evidence regarding the length of time that the bumps and delaminated section [*3]were present was equivocal, and there was no evidence regarding how long the debris had been on the shoulder (compare Rockenstire v State of New York, 135 AD3d at 1133). Even if defendant had actual or constructive notice of the hazardous condition, claimant's submissions evince that temporary repair work had been done in the months leading up to the accident, and the submissions fail to demonstrate what "reasonable [corrective] measures" should have been taken given the circumstances (id. at 1132). Given the myriad factual questions presented, including whether defendant had notice of the hazardous condition in the highway but failed to respond with appropriate maintenance measures, the Court of Claims properly denied claimant's motion.
Having agreed with the Court of Claims that a material factual question exists with regard to defendant's negligence, we reject defendant's argument that the claim is barred because the accident happened prior to the start of the maintenance "patrol period" (Hinds v State of New York, 144 Misc 464, 465 [1932], affd 240 App Div 742 [1933])[FN1]. Under Highway Law § 58, defendant "shall not be liable for damages suffered by any person from defects in state highways" from November 16 to the end of April each year. This provision does not obviate Court of Claims Act § 8, by which the defendant has waived immunity from liability for the negligence of its officers and employees (see Karl v State of New York, 279 NY 555, 559 [1939]; Miller v State of New York, 231 App Div 363, 368 [1931]).
Mulvey, Devine, Aarons and Pritzker, JJ., concur.
ORDERED that the order is affirmed, without costs.



Footnotes

Footnote 1: Although this argument was not raised before the Court of Claims, we may consider it because it implicates the jurisdiction of the Court of Claims — an issue that may be raised at any time (see Green v State of New York, 90 AD3d 1577, 1578 [2011], lv dismissed and denied 18 NY3d 901 [2012]).